# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.H.**

**No. 18-0127** (Randolph County 2017-JA-025)

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.H., by counsel David C. Fuellhart, appeals the Circuit Court of Randolph County's January 19, 2018, order terminating her parental rights to B.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), G. Phillip Davis, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her parental rights when less-restrictive dispositional alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 2, 2017, the DHHR filed an abuse and neglect petition against petitioner and the father alleging that petitioner tested positive for buprenorphine, commonly referred to as Suboxone, upon the delivery of B.H. The DHHR alleged that B.H. suffered severe withdrawal symptoms including seizures, myoclonic jerks, loose stools, and sleeping less than two hours after feeding. He was transferred to Ruby Memorial Hospital for further treatment. The petition further alleged that, although petitioner had a prescription for Suboxone, she had a history of substance abuse. The petition alleged that the child's father was incarcerated on federal charges related to manufacturing methamphetamine.

The petition also alleged that abuse and neglect proceedings involving petitioner's three older children were initiated in 2012. During these proceedings, one of petitioner's children was born addicted to cocaine and Suboxone, she was addicted to multiple substances, and abused

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

substances in front of the children. Her parental rights to the three children were involuntarily terminated. In the instant petition, the DHHR alleged that it did not appear that the circumstances of abuse and neglect had changed since the filing of the petition in 2012. Petitioner waived the preliminary hearing.

On September 25, 2017, the circuit court held an adjudicatory hearing at which the father was adjudicated as an abusing parent. Petitioner requested a continuance, which the circuit court granted. Thereafter, on November 28, 2017, petitioner stipulated to the allegations of abuse and neglect and was adjudicated as an abusing parent.

On January 4, 2018, the circuit court held a dispositional hearing at which petitioner moved for a post-dispositional improvement period, which the circuit court ultimately denied. Both the guardian and the DHHR objected to petitioner's motion and moved for termination of petitioner's parental rights. A nurse from Davis Medical Center testified that petitioner and the child both tested positive for buprenorphine at the child's birth and that the child suffered from extreme withdrawal symptoms, including seizures. Next, the DHHR presented evidence that in June of 2017 and July 2017, petitioner repeatedly tested positive for buprenorphine, but failed to bring her prescription for Suboxone multiple times. The director also testified that, in addition to testing positive for buprenorphine, petitioner also tested positive for methamphetamine in August of 2017. According to the director, petitioner admitted to snorting methamphetamine three days prior to that drug screen. Petitioner continued to test positive for buprenorphine through December of 2017, but again, many times she did not present her prescription.

Next, a caseworker testified regarding the parents' visits with the child. She testified that petitioner consistently visited the child in June of 2017 and the first part of July of 2017 and that petitioner arrived on time for visits when the father was in substance abuse treatment and transportation was arranged by the caseworker. However, according to the caseworker, after the father was released from incarceration, and when he was not in treatment, he and petitioner would often arrive late to visits or miss them altogether. The caseworker also explained that when the father attended visits with petitioner, she was more focused on him than she was on the child. The DHHR further presented testimony regarding petitioner's prior abuse and neglect case wherein she abused substances and gave birth to one child who was born addicted to substances. Petitioner was also using Suboxone throughout the prior proceedings. According to the DHHR, petitioner failed to successfully complete an improvement period and her parental rights to her three children were involuntarily terminated.

Petitioner testified regarding her addiction to substances and explained that she traveled to Maryland to see a doctor and obtain her prescription for Suboxone. Petitioner denied any illegal use of substances. She also explained that she and the father missed visits in December of 2017 because there was a miscommunication and a change in the caseworker that supervised the visits. Petitioner also testified that she allowed multiple individuals to stay in her home and that they brought drugs and needles into the home.

Following the parties' testimony, the circuit court noted that petitioner used Suboxone throughout the proceedings and the prior abuse and neglect proceedings, but never attempted to complete a long-term rehabilitation program or stop her use of Suboxone. The circuit court also

noted that the evidence demonstrated that petitioner's circumstances had not changed since her prior termination. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect, and specifically, the parents "don't want to do what is in the child's best interest as to drug use" and lifestyle. In light of the child's young age, the circuit court found it was in his best interests for petitioner's and the father's parental rights to be terminated. Ultimately, the circuit court terminated petitioner's parental rights in its January 19, 2018, order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. In support of this argument, petitioner asserts that her actions throughout the proceedings demonstrated by clear and convincing evidence that she would fully comply with a post-dispositional improvement period. We do not find her arguments persuasive.

West Virginia Code § 49-4-604(b)(7)(C) states that "[f]or purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the [DHHR] is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parental rights of the parent to another child have been terminated involuntarily[.]" Additionally, "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015). Despite the fact that the DHHR was not required to provide services to petitioner in these proceedings, petitioner received drug screening services and visitation with the child. While petitioner argues that she consistently tested negative for substances other than those prescribed to her, the record shows that petitioner repeatedly failed to provide her prescription for Suboxone at drug screens. Further, petitioner admitted to snorting methamphetamine during the proceedings.

---

[2]The father's parental rights were also terminated. According to the parties, the permanency plan for the child is adoption by his maternal grandmother.

3

Also, petitioner argues that she attended "the vast majority of her scheduled visits" and that her "active and consistent" visitation showed that she was likely to participate in an improvement period. However, according to the record, petitioner was often late to visits or missed them completely, especially when the father was with her. Accordingly, we find no error in the circuit court's denial of petitioner's motion for a post-dispositional improvement period.

Further, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

As discussed above, although the DHHR was not required to provide services, petitioner was afforded drug screening services and visitation. However, during the proceedings, petitioner admittedly snorted methamphetamine, failed to provide her prescriptions for Suboxone at numerous drug screens, was often late for visits, and missed visits with the child. Further, despite the fact that her use of Suboxone caused the child severe withdrawal symptoms after his birth, petitioner did not take any steps to cease the use of this substance. While petitioner argues that the circuit court erred in terminating her parental rights instead of employing a less-restrictive dispositional alternative such as guardianship with the maternal grandmother or participation in an improvement period, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence presented below, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and that due to the child's young age, termination of petitioner's parental rights was in the child's best interests. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 19, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  June 11, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

5